UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Linda Gavin,

    Plaintiff

v.                                                  Civil Action No.  1-11-cv-00159-LM

Liberty Mutual Group Inc.,

    Defendant

**DEFENDANT'S OPPOSITION TO
PLAINTIFF'S MAY 1, 2012 MOTION TO COMPEL**

    Defendant Liberty Mutual Group Inc. ("Liberty Mutual"), through its counsel, hereby submits its Opposition to Plaintiff's May 1, 2012 Motion to Compel Production of Documents Reviewed by Janna Pasquini Mullane in Preparation for Deposition, to Produce a Privilege Log, and to Compel the Testimony of Janna Pasquini Mullane ("Motion to Compel" or "Motion"), and in support states as follows:

**<u>INTRODUCTION</u>**

    Plaintiff seeks to force Janna Mullane ("Ms. Mullane"), a Massachusetts resident who was nearly eight months pregnant at the time of her April 17, 2012 deposition, to travel to New Hampshire and submit to further questioning on the issue of what was discussed between Ms. Mullane and her attorneys during the preparation for her deposition.[1]  Plaintiff does not cite a single case where a deponent was compelled to testify as to communications with counsel during a deposition preparation session.   Indeed, as explained below, courts recognize that these communications are protected from disclosure as opinion work product, and Plaintiff has not

---

[1] Although Plaintiff agreed to conduct Ms. Mullane's deposition in Massachusetts, where she lives and works, Plaintiff's counsel has informed counsel for Liberty Mutual that Ms. Mullane must travel to New Hampshire to answer questions about what was discussed during her deposition preparation.

even attempted to establish a "substantial need," much less the extreme circumstances necessary to overcome the protection afforded to opinion work product. Plaintiff, in fact, offers no explanation whatsoever as to why she could possibly need to know what was discussed during this session. Clearly Plaintiff's only goal is to learn about Liberty Mutual's litigation strategy in order to gain an unfair advantage in the litigation.

In addition to work product protection, the communications at issue fall squarely within the attorney-client privilege, as Ms. Mullane retained Liberty Mutual's counsel to represent her in connection with this action shortly after she discovered she was being deposed. Plaintiff's baseless argument in favor of breaching the attorney-client privilege is dependent upon her counsel's false representation that that Ms. Mullane retained counsel only the day before her deposition, and that she did not realize she was signing an agreement to be represented by counsel. However, as explained in detail below, and as demonstrated by the retention agreement provided herewith, Ms. Mullane retained counsel nearly seven weeks before her deposition. The mere fact that Ms. Mullane was unable to recall the title of the retention letter she signed does not, of course, lead to the conclusion that she did not realize she was represented by counsel. Further, Plaintiff's claim that the privilege is waived due to the lack of a privilege log at the time of production is simply contrary to the law in this district. The sole authority cited by Plaintiff on this point is inapposite, and applies only in the context of a court-ordered subpoena.

Plaintiff also demands copies of all documents that were reviewed by Ms. Mullane during the deposition preparation with her counsel. However, all documents that Ms. Mullane reviewed during her deposition preparation session are already in the possession of Plaintiff's counsel. In fact, Ms. Mullane testified to the best of her recollection as to what was reviewed at her deposition preparation. Plaintiff's counsel, however, insists upon seeing the actual documents

that Ms. Mullane reviewed, with any notations, although Plaintiff never made this request before filing her motion.  Because the only notations on the documents are underlines beneath Ms. Mullane's name (when it appears on the documents), Liberty Mutual will produce these additional copies in order to prevent further unnecessary motion practice on this issue. Accordingly, there is nothing more to compel.

Plaintiff evidently believes that she can gain favor with the Court by falsely portraying Liberty Mutual's counsel as unethical and Ms. Mullane as having perjured herself during her deposition.[2]  The Court should not fall into Plaintiff's trap, and should see Plaintiff's motion for what it really is: a desperate act by a party that has thus far been unable to unearth any evidence to support her claims.  Therefore, the Court should deny Plaintiff's inflammatory and baseless Motion.

## <u>ARGUMENT</u>

## I.       **The Communications Sought Are Protected From Disclosure By The Work Product Doctrine.**

Because this Court is sitting in diversity, the scope of the work product doctrine is determined under federal law.  <u>Galvin v. Pepe</u>, 2010 U.S. Dist. LEXIS 82119, at *5 (D.N.H. July 8, 2010) ("Federal courts apply federal law when addressing the work product doctrine, even in diversity cases.") (citations omitted).  The work product doctrine protects from disclosure, among other things, the mental impressions, conclusions, opinions, and legal theories of an attorney concerning the litigation.  <u>Hickman v. Taylor</u>, 329 U.S. 495, 510 (1947).  The doctrine covers not only documents and tangible things, but also verbal communications.  <u>E.g.</u> <u>FDIC v. Nash</u>, 1998 U.S. Dist. LEXIS 23520, at *11 (D.N.H. Sept. 25, 1998) ("Oral communications of

---

[2] As explained, Plaintiff has levied ethical charges without any concern for whether there was a basis for doing so and continues to maintain these charges even though Plaintiff was asked to modify her Motion and exclude such baseless charges.  This Court can *sua sponte* determine whether such conduct is sanctionable under Rule 11 of the Federal Rules of Civil Procedure.

attorney work product, although not included within the work product doctrine of Rule 26(b), are protected by the broader scope of federal common-law work product doctrine").

Plaintiff seeks disclosure of the communications between Ms. Mullane and defense counsel at her deposition preparation session.  However, federal courts have held that these communications are protected "opinion" work product, regardless of whether or not the deponent is also protected by the attorney-client privilege.[3]  In re Terrorist Attacks on September 11, 2001, 2008 U.S. Dist. LEXIS 45751, at *18 (S.D.N.Y. May 21, 2008) (refusing to reopen deposition of former employee to inquire into deposition preparation based on work product immunity, because "questioning regarding the content of [these] communications would likely reveal [the attorney's] thought processes and legal strategies."); Lining v. Temp. Pers. Serv., 2008 U.S. Dist. LEXIS 33477, at *7 (W.D. Pa. Apr. 23, 2008) (questions regarding the "substance of any meeting between Plaintiff and counsel prior to the deposition . . . would clearly fall within the boundaries of the work product doctrine"); Miramar Constr. Co. v. The Home Depot, Inc., 167 F. Supp. 2d 182, 185-85 (D.P.R. 2001) (where corporate attorney-client privilege did not apply to an independent contractor, work product immunity nevertheless applied to communications in preparation for his deposition); In re Gulf Oil/Cities Serv. Tender Offer Litig., 1990 U.S. Dist. LEXIS 9082, at *8 (S.D.N.Y. July 20, 1990) (holding it "obvious" that discussions between a *former employee* and the former employer's counsel in preparation for a deposition fall within the scope of work product protection).  It is therefore not surprising that Plaintiff has failed to

---

[3] Indeed, some federal courts have held that counsel's selection of documents in preparation for a deposition is shielded from discovery as "opinion" work product.  E.g. In re Yasmin & Yaz (Drospirenone) Mktg., Sales & Relevant Prods. Liab. Litig., 2011 U.S. Dist. LEXIS 69711, at *6-7 (S.D. Ill. June 29, 2011) (citing Mattenson v. Baxter Healthcare Corp., 438 F.3d 763, 767-68 (7th Cir. 2006); Sporck v. Peil, 759 F.2d 312 (3rd Cir. 1985)).  Nevertheless, Liberty Mutual's counsel did not object to Ms. Mullane testifying as to the documents she reviewed in preparing for her deposition.

cite a single case where a Court compelled the disclosure of discussions held between counsel and a witness during a deposition preparation session.

To overcome work product protection under these circumstances, "a showing of substantial need is not enough." In re Raytheon Co. Sec. Litig., 2003 U.S. Dist. LEXIS 28065, at *19 (D. Mass. Aug. 26, 2003). Rather, "to pierce the work product rule with respect to opinions and mental impressions of counsel for the adversary, the moving party must show 'extraordinary' circumstances.'" Id. (citing Upjohn Co. v. United States, 449 U.S. 383, 401 (1981); Sporck, 759 F.2d at 316). Plaintiff has not argued any extraordinary circumstances, and in fact, Plaintiff has not even attempted to meet the lower "substantial need" test that would apply to non-opinion work product. "Substantial need" must consist of something more than that a "party cannot establish its case at trial." Raytheon, 2003 U.S. Dist. LEXIS 28065, at *20. Courts recognize that if this were the case, any party could allege anything, without a factual basis, and then ask the court for permission to "rummage through the adversary's work product material with a hope that it just might find what it could not establish otherwise." Id. Examples of materials that a party may have a "substantial need" for include "test results that cannot be duplicated," "photographs taken immediately after an accident when the accident scene has since changed," and "contemporaneous statements taken from, or made by, parties or witnesses." Id. at *21. Communications made during Ms. Mullane's deposition preparation session clearly do not fit this category.

Plaintiff has no justifiable need to know what was discussed during Ms. Mullane's deposition preparation session. Rather, Plaintiff's counsel is likely frustrated that discovery has not revealed any evidence helpful to her case, and is now seeking access to Liberty Mutual's counsel's opinion and mental impressions in order to gain an unfair advantage in the litigation.

Consequently, the work product doctrine protects these conversations from disclosure, and the Court can deny Plaintiff's Motion without considering application of the attorney-client privilege.

## II.   The Communications And Materials Sought Are Protected From Disclosure By The Attorney-Client Privilege.

Even if the federal work product doctrine does not mandate denial of Plaintiff's motion, the information sought is still protected from disclosure by the attorney-client privilege, as discussed below.

### A.  The Law of Massachusetts Governs The Issue Of Privilege As To Ms. Mullane.

Federal Courts sitting in diversity apply state law in determining the scope of any applicable privileges.  E.g. Gargiulo v. Baystate Health, Inc., 2011 U.S. Dist. LEXIS 76948, at *4 (D. Mass. July 15, 2011).  However, the law to be applied is not necessarily the law of the forum state.  Instead, federal courts apply the law of the state where communications took place. In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Prods. Liab. Litig., 2011 U.S. Dist. LEXIS 39820, at *30 (S.D. Ill. Apr. 11, 2011) ("[I]n most if not all instances the law of the state with the most significant relationship to the communication will govern the existence and scope of attorney-client privilege.").[4]  See also Lego v. Stratos Lightwave, 224 F.R.D. 576, 579 (S.D.N.Y. 2004) ("the interest analysis usually has led New York courts to apply the law of the jurisdiction in which the assertedly privileged communications were made"); Connolly Data Sys. v. Victor Technologies, 114 F.R.D. 89, 92 (S.D. Cal. 1987) (applying the privilege law of California as the place of deposition preparation, even though the testimony was to be used in a

---

[4] New Hampshire has looked to the Restatement (Second) of Conflict of Laws for most choice of law issues. Guardian Angel Credit Union v. MetaBank, 2010 U.S. Dist. LEXIS 44281, at *18 (D.N.H. May 5, 2010), and would likely follow the Second Restatement's "most significant relationship" test for choosing the applicable privilege law. In re Yasmin & Yaz, 2011 U.S. Dist. LEXIS 39820, at *36 (citing Glowski v. Allstate Ins. Co., 589 A.2d 593, 595 (N.H. 1991)).

Massachusetts proceeding).   The rationale for this rule is that the parties who made the communications would have expected that those communications would remain confidential under the law of that jurisdiction, and therefore that jurisdiction has the strongest interest in applying its privilege law.  Lego, 224 F.R.D. at 579.

Here, the witness both lives and works in another state (Massachusetts) where she was prepared for her deposition, and ultimately, deposed.  Consequently, all of the communications at issue took place in Massachusetts and should be governed by Massachusetts privilege law.

**B.  The Communications At Issue Are Privileged.**

In connection with this litigation, on March 2, 2012, Ms. Mullane and Jackson Lewis entered into an agreement whereby Jackson Lewis would also represent Ms. Mullane individually.[5]   Such representation was deemed necessary because, among other things, Ms. Mullane was personally accused by Plaintiff of some of the alleged wrongdoing that is the basis for her Complaint.   See Compl. ¶¶ 25, 26.   Accordingly, the communications between Ms. Mullane and her counsel, including communications in preparation for her deposition, were privileged.

Under Massachusetts law, there is no reason that a former employee cannot sign an individual retainer agreement with counsel for a corporate defendant.  Clark v. Beverly Health and Rehab. Serv., Inc., 440 Mass. 270, 277 n.9 ("The former employee who wished to be represented by the organization's counsel may, if circumstances permit, freely choose to do so . . .") (quoting Michaels v. Woodland, 988 F. Supp. 468, 474 (D.N.J. 1997)).[6]  Plaintiff's attempt to

---

[5] This agreement is attached to the accompanying declaration of Douglas J. Hoffman ("Hoffman Decl.), as Exhibit A.

[6] In fact, even if New Hampshire law applied, the very case that Plaintiff relies on to argue that Ms. Mullane does not fall within the scope of Liberty Mutual's attorney-client privilege held that there is no reason that even a former employee such as Ms. Mullane cannot retain the corporate attorneys to represent her individually.   Totherow v. Rivier Coll., 2007 N.H. Super LEXIS 4, at *15 n.7 (D.N.H. Feb. 20, 2007) ("Of course, should any present or

invalidate the retainer agreement between Jackson Lewis and Ms. Mullane is entirely based upon the inexplicable, and false, assertion that Ms. Mullane signed her retainer agreement the day before the deposition.  While the timing of the retention is irrelevant in any event, Ms. Mullane in fact never testified that she signed the retainer the day before her deposition.  Nor did Plaintiff's counsel ever ask her when she signed the document.  Had that happened, Plaintiff's counsel would know that Ms. Mullane signed her retainer agreement with Jackson Lewis on March 2, 2012, nearly seven weeks before her deposition, and shortly after Plaintiff's counsel asked Liberty Mutual to make her available for a deposition.

In fact, Plaintiff's counsel would have been aware of this fact prior to filing the motion to compel had they simply given Liberty Mutual a chance to respond to its letter sent on the afternoon of April 27, 2012.[7]  While Plaintiff complains that Liberty Mutual did not previously produce a copy of this retainer agreement, the reason is simple:  Plaintiff never asked for it. Instead, Plaintiff filed this unnecessary motion in a transparent and shameless attempt to paint defense counsel in an unnecessarily (and inaccurately) poor light.

Plaintiff's only authority in support of invalidating the retainer agreement is In re Grand Jury Subpoena, 274 F.3d 563 (1st Cir. 2001), which is distinguishable on its facts.  In that case,

---

former employee of the college indicate that he or she is represented (either by the college's attorneys or by independent counsel), Rule 4.2 will preclude plaintiff's attorneys from interviewing that person without the consent of the person's lawyer.").

[7] Pursuant to Local Rule 7.1(c), any party filing a non-dispositive motion "shall certify to the court that a good faith attempt has been made to obtain concurrence in the relief sought."  Plaintiff's Motion contains no such certification, nor did Plaintiff make a good faith attempt to resolve the issue prior to filing her motion.  Plaintiff sent a letter to Liberty Mutual's counsel via email at 1:07 p.m. on Friday, April 27, 2012, stating that, among other things, Plaintiff planned to file a motion to compel with regard to the Mullane deposition, though Plaintiff did not state whether she planned to compel the agreement or further testimony.  See Hoffman Decl. Ex. B.  Before Liberty Mutual and its counsel had a chance to confer regarding a response, Plaintiff filed the instant motion on May 1, 2012, a mere two business days later.  Had Plaintiff provided Liberty Mutual a reasonable chance to respond, she would have learned, at a minimum, that Ms. Mullane had not signed her retainer letter the day before the deposition, but that she had in fact signed it nearly seven weeks before her deposition.  Plaintiff's actions in unnecessarily rushing this motion to Court are also contrary to the parties' joint discovery plan, which provides: "The parties agree that they will attempt to resolve disputes regarding the assertion of privilege between themselves and if unable to do so, will file a motion with the court for in camera review and decision on the issue."

the defendant corporation had already waived its own attorney-client privilege.  Id. at 568.

However, two corporate officers claimed that they had an individual attorney-client relationship

with counsel, though there was no engagement agreement during the relevant time period, and

sought to quash a subpoena on that basis.  Id. at 569.  Under those circumstances, the Court held

that the corporate officers could not circumvent the corporation's waiver of the privilege by

claiming they had also been individually represented, when in fact the communications at issue

were made in a corporate capacity as opposed to an individual capacity.  Id. at 568.  Because the

individuals had claimed that the documents were jointly privileged, and because the corporation

had already waived its privilege, the privilege could not survive the corporation's waiver.  Here,

by contrast, there has been no waiver of the attorney client privilege by either Liberty Mutual or

Ms. Mullane.  Moreover, and perhaps more importantly, Ms. Mullane evidenced a clear intent to

be represented individually by counsel by signing a representation agreement with Jackson

Lewis seven weeks before her deposition.[8]

Plaintiff also twists Ms. Mullane's deposition testimony in a futile attempt to create the

impression that Ms. Mullane was somehow tricked into being represented by Liberty Mutual's

counsel.  Plaintiff's counsel refrained from simply asking Ms. Mullane if she was represented by

counsel.  Nor did Plaintiff's counsel ask Ms. Mullane if she ever signed a document agreeing to

have Jackson Lewis represent her in connection with this matter.  Instead, Plaintiff's counsel

asked Ms. Mullane if she had signed a "retainer agreement."  Mullane Tr. at 24.  Likely unsure

of the exact title of the document she had signed seven weeks prior, Ms. Mullane stated that she

---

[8] Plaintiff cites no Massachusetts authority adopting this multifactor test for establishing an individual claim of privilege that is discussed on page 8 of Plaintiff's brief, particularly where, as here, the witness was accused of wrongdoing by the Plaintiff and had executed a retainer agreement with counsel clearly evidencing the intent to be represented.

was not sure.[9]  Id.  Plaintiff asks the court to infer from Ms. Mullane's lack of photographic memory (at a time when she was nearly eight months pregnant) that she did not intend to retain Jackson Lewis as her counsel, and was not aware that she was agreeing to be represented by Jackson Lewis.  Pl.'s Mem. at 8-9.[10]  Under the circumstances however, Ms. Mullane's inability to recall the title of the document is completely understandable and more importantly, does not permit Plaintiff to delve into privileged communications.

The attorney-client privilege cannot be overcome by Plaintiff's mere speculation -- based on a demonstrably false assumption -- that Plaintiff was manipulated or coerced into retaining Jackson Lewis as her counsel.  The Court should not allow Plaintiff's counsel wholly unwarranted mudslinging and character assassination to distract it from the simple truth that communications between an attorney and his or her client are privileged and safe from disclosure.

Furthermore, even if she was not individually represented by Liberty Mutual's counsel, Ms. Mullane's conversations with counsel would nevertheless be protected from disclosure by the privilege applicable to Liberty Mutual.  Massachusetts law rejects the strict "control group" test advocated by Plaintiff.  Messing, Rudavsky & Weliky, P.C. v. President & Fellows of Harvard Coll., 436 Mass. 347, 358 (Mass. 2002) ("We reject the 'control group' test, which includes only the most senior management, as insufficient to protect the "principles motivating [Rule 4.2]."").

---

[9] Although defense counsel used the generic term "retainer agreement" to refer to Ms. Mullane's agreement with Jackson Lewis, Ms. Mullane's agreement is actually titled an "Engagement and Fee Agreement."  See Hoffman Decl., Ex. A.

[10] Plaintiff's assumption that Ms. Mullane signed the agreement the day before the deposition is also the sole basis for her specious argument that Ms. Mullane would be committing perjury if she suddenly "remembered" what she had signed, and the further accusation that counsel for Liberty Mutual "perhaps solicited" that perjury.  Pl.'s Mem. at 9.  It is entirely unclear how a witness could possibly commit perjury through her inability to recall the title of a document she had signed seven weeks before.

Contrary to Plaintiff's assertions, Ms. Mullane was not merely a rank and file low level employee.  In fact, she testified at her deposition that she managed and evaluated employees.  Mullane Tr. 110:2-9.  Regardless, courts in Massachusetts have recognized that even lower level, former employees may be covered by an organization's attorney client privilege.  Command Transp., Inc. v. Y.S. Line (USA) Corp., 116 F.R.D. 94, 96-97 (D. Mass. 1987).  In Command Transp., Inc., the Court, applying Massachusetts privilege law, applied the attorney client privilege to communications between corporate counsel and a former employee who had written a potentially defamatory letter concerning the plaintiff, which was the subject of the plaintiff's lawsuit against the organization.  Id. at 94-95.  The employee met with counsel for the organization to discuss the case, and plaintiff sought testimony regarding the content of those conversations.  Id. at 95.  The Court refused to compel disclosure of those conversations, because they concerned actions taken by a former employee which were relevant to the litigation, the communications had been treated as confidential, and there was no evidence that the former employee's interests or loyalties diverged from those of the corporation.  Id. at 97.  The facts here are nearly identical.  Ms. Mullane was identified in Plaintiff's Complaint as a wrongdoer who was involved in Plaintiff's departure from Liberty Mutual, Ms. Mullane discussed the matter with counsel for Liberty Mutual, those conversations were kept confidential, and there is nothing to suggest that Liberty Mutual and Ms. Mullane's interests are not aligned.

Plaintiff cites to cases interpreting Rule 4.2 of the Rules of Professional Conduct, which governs ex-parte communications with employees and former employees.  At most, these cases establish that under some circumstances, opposing counsel may conduct ex-parte interviews of lower-level and ex-employees in connection with litigation.  However, as Plaintiff's own authority also concedes, even where ex-parte interviews are permitted, counsel is forbidden from

inquiring into privileged matters.  Totherow v. Rivier Coll., 2007 N.H. Super LEXIS 4, at *15 n.7 (citing Clark v. Beverly Health and Rehab. Serv., Inc., 440 Mass. 270, 278-79 (2003)). Therefore, even if Plaintiff were permitted to speak with Ms. Mullane ex-parte due to the fact that she is a former employee, her counsel still would not be permitted to ask her about privileged information.[11]

### C. The Lack Of A Privilege Log At The Time Of A Document Production Does Not Waive The Attorney-Client Privilege.

Plaintiff argues that even if the materials sought are protected by the attorney-client privilege, Liberty Mutual waived the privilege when it did not produce a privilege log.  As an initial matter, it is entirely unclear what materials Plaintiff seeks to discover as a result of this alleged waiver, or what information, other than communications between counsel and Ms. Mullane, that Plaintiff believes should have appeared on such a log.  As stated above, all documents that Ms. Mullane reviewed during her deposition preparation session are already in Plaintiff's possession, and Liberty Mutual further agrees to produce the actual documents (with underlining) that Ms. Mullane looked at during her deposition preparation session.

Regardless, the authority that Plaintiff cites in support of her argument, In re Grand Jury Subpoena, 274 F.3d 563 (1st Cir. 2001), has been held limited to responses to a subpoena, and not applicable to responses to discovery requests.  Public Serv. Co. of NH v. Portland Natural Gas, 218 F.R.D. 361, 364 (D.N.H. 2003) ("a waiver finding when the responding party invokes a privilege but initially fails to produce a privilege log with its discovery responses is unnecessarily harsh").  In Public Serv. Co., the Court reversed an earlier ruling by Magistrate Judge Muirhead, which had cited to In re Grand Jury Subpoena for the proposition that attorney

---

[11] Despite their implication to the contrary, Plaintiff's counsel never sought to interview Ms. Mullane ex-parte, and asked only to have her produced by Liberty Mutual as a witness, which seems to suggest that Plaintiff's counsel understood that he needed to contact counsel in order to speak with Ms. Mullane.

client privilege is waived when a privilege log is not provided. The Court found this reliance misplaced, because the First Circuit had made its ruling in the context of a subpoenaed witness' failure to produce a privilege log, in violation of Fed. R. Civ. P. 45(d)(2). Public Serv. Co., 217 F.R.D. at 362 n. 2. The Court noted that subpoenas are "court orders," and thus a failure to comply may be punished as contempt of court. Id. By contrast, a failure to respond to party discovery is not punishable as contempt unless there is a refusal to comply with an order to compel. Id. Therefore, the Court held that the waiver language from In re Grand Jury Subpoena was inapplicable outside the context of a subpoena. Id.

Accordingly, under the facts presented here, the mere failure to produce a privilege log at the time of production does not constitute a waiver of the attorney-client privilege. This is particularly true here, where the Plaintiff did not even raise the issue of a privilege log prior to filing a motion to compel. Furthermore, even if the privilege could conceivably be waived in this manner, the information sought in Plaintiff's motion is protected by the privilege belonging to Mullane individually. The attorney-client privilege can only be waived by its owner. Hanover Ins. Co. v. Rapo & Jepsen Ins. Servs., 449 Mass. 609, 617 (2007) ("The attorney-client privilege belongs to the client and can be waived only by the client"). Thus, even if the lack of a privilege log could constitute a waiver of the privilege, Liberty Mutual's purported waiver of the privilege would not affect the discoverability of the communications materials sought here.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion should be DENIED in its entirety.

Dated:  May 18, 2012

LIBERTY MUTUAL GROUP INC,
By its attorneys,


/s/ Douglas J. Hoffman
Douglas J. Hoffman (pro hac vice)
JACKSON LEWIS LLP
75 Park Plaza, 4th Floor
Boston, MA 02116
Tel:  (617) 367-0025
Fax: 617-367-2155
Email:  hoffmand@jacksonlewis.com

Debra Weiss Ford (NHBA # 2687)
Daniel Schwarz (NHBA # 2282)
K. Joshua Scott (NHBA # 17479)
JACKSON LEWIS LLP
100 International Drive, Suite 363
Portsmouth, NH 03801
Tel:  603-559-2700
Fax:  603 559-2701
Email:  fordd@jacksonlewis.com
Email:  Daniel.Schwarz@jacksonlewis.com
Email:  joshua.scott@jacksonlewis.com


## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was served upon counsel for Plaintiff via the Court's Electronic Filing System on May 18, 2012.

/s/ Douglas J. Hoffman
Jackson Lewis LLP


4833-1787-2143, v.  2