```
            UNITED STATES DISTRICT COURT
          FOR THE DISTRICT OF NEW HAMPSHIRE
```

Linda Gavin

   v.                                Civil No. 11-cv-159-LM

Liberty Mutual Group Inc.


### O R D E R

Linda Gavin has sued her former employer, Liberty Mutual Group, Inc. ("Liberty Mutual"), in three counts, asserting claims for constructive discharge (Count I), wrongful termination (Count II), and enhanced compensatory damages (Count III).  Before the court is Gavin's motion to compel: (1) production of the documents reviewed by a former Liberty Mutual employee before her deposition; (2) production of a privilege log; and (3) further deposition testimony from the former employee concerning her discussions with counsel before and during her deposition.  Liberty Mutual objects.  For the reasons that follow, Gavin's motion to compel is granted in part and denied in part.

### Background

This dispute arises out of the April 17, 2012, deposition taken by Gavin from Janna Pasquini Mullane.  At the time of the

events giving rise to Gavin's claims, Mullane worked in human resources at Liberty Mutual.  At the time of her deposition, Mullane was no longer employed by Liberty Mutual.

In March of 2012, Mullane executed a document dated February 29, 2012, that bears the heading "Confirmation of Engagement and Fee Agreement" and was provided to her by Debra Weiss Ford of Jackson Lewis, which also represents Liberty Mutual in this action.  That Agreement provides, in pertinent part:

> We are pleased that you have decided to retain Jackson Lewis . . . for legal services in connection with your acting as a witness on behalf of Liberty Mutual Group Inc. . . .  You will not be responsible for any legal fees or costs with regard to our representation of you in this matter.  All fees and costs in connection with our representation of you in matters related to Liberty Mutual Group Inc. will be paid by Liberty Mutual Group Inc.
>
> . . . .
>
> As we discussed, we will represent [Liberty Mutual] in connection with the claims asserted by Linda Gavin . . .

Hoffman Decl., Ex. A (doc. no. 22-2), at 1.

At Mullane's deposition, the following relevant exchanges took place:

> Q.  As to the documents that you reviewed yesterday [in preparation for the deposition], can you please tell me what, if any, documents you remember looking at?
>
> A.  I don't know specifically.

2

    Q.   Give me the best description you can from your recollection of two days ago.

    A.   There were some emails, there were some memos, and there were some legal documents.

    Q.   Do you remember what the legal documents were?

    A.   No.

    . . . .

    Q.   All right. Now, when you say you met with lawyers [before the deposition], what lawyers did you meet with?

    A.   Josh, Scott, Doug, and Kim.

    . . . .

    Q.   And when did that occur?

    A.   Yesterday.

    . . . .

    Q.   (By Mr. Lyons) Tell me exactly what was said when you met with the lawyers, please.

    MR. HOFFMAN:  Objection.
Don't Answer that.

    MR. LYONS:  Why?

    MR. HOFFMAN:  Attorney/client privilege.

    MR. LYONS:  How is this witness your client when she's no longer an employee of Liberty Mutual?

    MR. HOFFMAN:  I am not going to get into a big argument with you.

    MR. LYONS:  I would like to know for the record. She's not an employee.

>      MR. HOFFMAN:  She's a representative –
>
>      MR. LYONS:  I have asked her – is she an employee?
>
>      MR. HOFFMAN:  It's also work product.
>
>      MR. LYONS:  Is she an employee?  You prepared her for a deposition.
>
>      MR. HOFFMAN:  There is a retainer agreement as well.
>
>      MR. LYONS:  So she has hired you as your (sic) attorney?
>
>      MR. HOFFMAN:  I am not going to get into any more of this.  The objection is on the record.  If you want to file a motion, you can.
>
>      MR. LYONS:  I am going to.
>
>      Q. (By Mr. Lyons) I have a question for you.  Have you signed a retainer agreement with any of the attorneys that you indicated that you met with?
>
>      A.  I don't know what it's called, but I signed something.
>
>      Q.   What did you sign?
>
>      A.   I don't recall.

Pl.'s Mot. to Compel, Ex. 1, Mullane Dep. (doc. no. 18-1), at 19, 22, 23-24.  Based on the foregoing, Gavin filed the motion to compel currently before the court.

**Legal Principles**

"Unless otherwise limited by court order, the scope of discovery . . . [extends to] any nonprivileged matter that is relevant to any party's claim or defense – including the existence, description, nature, custody, condition, and location of any documents . . . .  Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).  "[T]he purpose of pretrial discovery is to 'make trial less a game of blindman's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent.'"  Wamala v. City of Nashua, No. 09-cv-304-JD, 2010 WL 3746008, at *1 (D.N.H. Sept. 20, 2010) (quoting Macaulay v. Anas, 321 F.3d 45, 53 (1st Cir. 2003)).

The Federal Rules of Civil Procedure permit a party to "move for an order compelling disclosure or discovery."  Fed. R. Civ. P. 37(a)(1).  "The party seeking information in discovery over an adversary's objection has the burden of showing its relevance."  Caouette v. OfficeMax, Inc., 352 F. Supp. 2d 134, 136 (D.N.H. 2005) (citing Whittingham v. Amherst Coll., 164 F.R.D. 124, 127 (D. Mass. 1995); Gagne v. Reddy, 104 F.R.D. 454, 456 (D. Mass. 1984)).

With the foregoing principles as a backdrop, the court turns to the specific discovery requests at issue.

### A. Production of Documents

Gavin asks the court to compel Liberty Mutual "to provide a complete copy of each and every document reviewed by Mullane in preparation for her deposition, including all notations, etc. upon same." Pl.'s Mot. to Compel (doc. no. 18), at 11. Liberty Mutual says it has agreed to produce copies of the annotated documents Mullane reviewed before her deposition. Thus, there appears to be no dispute over this category of discovery. Accordingly, the court shall order Liberty Mutual to do what it has already agreed to do, i.e., produce copies of the annotated documents Mullane reviewed before her deposition.

### B. Privilege Log

Regarding the privilege-log issue, Gavin argues that the attorney-client privilege has been waived due to Liberty Mutual's failure to produce a privilege log, and further asks the court to compel Liberty Mutual to "provide a specific and detailed Privilege Log as required by Fed. R. Civ. P. 26(b)(5)," Pl.'s Mot. to Compel (doc. no. 18), at 11. In light of Liberty Mutual's agreement to turn over copies of the annotated documents Mullane reviewed before her deposition, it is not at

all clear what other disputed discovery materials might be listed in a privilege log. As best the court can tell, all that remains in dispute is Gavin's request that the court compel Mullane "to testify as to the substance and content of all conversations she had with counsel for the Defendant in preparation for her deposition and during all breaks during and following the deposition held on April 17, 2012." Pl.'s Mot. to Compel (doc. no. 18), at 10. Because Gavin has not even indicated what materials might be reported by means of a privilege log, her request for a privilege log is denied.

Beyond that, the court is not persuaded by Gavin's three-sentence argument that the attorney-client and work-product privileges have been waived as a result of Liberty Mutual's "failure" to produce a privilege log. For one thing, Gavin has not identified any discovery request to which Liberty Mutual's response was rendered inadequate by the absence of a privilege log. Moreover, the case on which Gavin relies for her theory of waiver, In re Grand Jury Subpoena, 274 F.3d 563 (1st Cir. 2001), is inapposite. In that case, the court of appeals affirmed the trial court's decision to deny a motion to quash a subpoena, id. at 575, and in so doing, stated the rule that "[a] party that fails to submit a privilege log is deemed to waive the underlying privilege claim," id. at 576 (citing Dorf & Stanton

Commc'ns, Inc. v. Molson Breweries, 100 F.3d 919, 923 (Fed. Cir. 1996)). But, as Judge Barbadoro held in Public Service Co. of N.H. v. Portland Natural Gas, 218 F.R.D. 361 (D.N.H. 2003), subpoenas are different from discovery requests, and the rule stated in In re Grand Jury Subpoeana does not apply to the failure to timely produce a privilege log in response to an interrogatory, see Public Service, 218 F.R.D. at 362-63.

Here, there is neither an interrogatory nor a request for production, but merely a line of questioning during a deposition, and Gavin has identified no authority for the proposition that after invoking attorney-client and work-product privilege during Mullane's deposition, Liberty Mutual was required to follow up with a privilege log or risk waiving those privileges. In sum, under the circumstance of this case, Liberty Mutual did not waive any privilege by not providing Gavin with a privilege log.

### C.  Further Deposition Testimony

Finally, Gavin asks the court for an order compelling Mullane

> to testify as to the content and substance of each and every meeting and/or conversation she had with Liberty Mutual or its attorneys in preparation for her deposition, including those conversations that were held following the termination of her employment with Liberty Mutual in September or October 2011, during,

>and following the deposition conducted on April 17, 2012.

Pl.'s Mot. to Compel (doc. no. 18), at 11.  Gavin has not demonstrated that Mullane was ever asked about meetings or conversations with Liberty Mutual during her deposition, much less that a privilege was ever invoked to prevent her from answering any such questions.  Accordingly, the discussion that follows is limited to the question actually posed at the deposition, which concerned conversations Mullane had with Liberty Mutual's attorneys.

As a preliminary matter, the court notes that in her motion to compel, Gavin does not attempt to explain the relevance of the content of Mullane's conversations with Liberty Mutual's attorneys.  Moreover, in her reply to Liberty Mutual's objection to her motion to compel, she criticizes, as "gratuitous," Liberty Mutual's statement that her "only goal is to learn about [its] litigation strategy in order to gain an unfair advantage in the litigation."  Pl.'s Reply (doc. no. 27), at 7 (emphasis omitted).  But, she goes no further and, for a second time, fails to explain how the information she seeks is relevant.  That alone is reason enough to deny her motion to compel as it relates to this category of information.  See Caouette, 352 F. Supp. 2d at 136.  However, even if Gavin had carried her burden of establishing the relevance of the conversations between

9

Mullane and Liberty Mutual's counsel, the content of those conversations would be protected by the work-product doctrine.[1]

With regard to Liberty Mutual's invocation of the work-product doctrine, Gavin makes the following argument:

> Even if the [work-product] privilege applies to Mullane, which Plaintiff respectfully asserts it does not, the tangible materials (i.e. the documents reviewed by Mullane in preparation for her deposition) and/or their intangible equivalent (her testimony) were clearly not prepared in preparation for litigation and/or for trial.
>
> Therefore, Defendant should be compelled to produce the specific documents Mullane reviewed in preparation for her deposition and all documents relating to Mullane's testimony and Mullane should be compelled to testify as to the substance and content of all conversations she had with counsel for the Defendant in preparation for her deposition and during all breaks during and following the deposition held on April 17, 2012.

Pl.'s Mot. to Compel (doc. no. 18), at 7-8.  As Liberty Mutual has agreed to produce the documents Mullane reviewed, and the court is ordering their production, all that remains to be decided is Gavin's right to testimony from Mullane regarding conversations she had with Liberty Mutual's counsel.

In its objection to Gavin's motion to compel, Liberty Mutual contends that application of the work-product doctrine in

---

[1] Because the work-product doctrine applies and precludes Gavin from inquiring into Mullane's conversations with Liberty Mutual's counsel, there is no need to address Liberty Mutual's invocation of attorney-client privilege.

this case is governed by federal law and further contends that, under federal law, communications between a third-party deponent and a party's counsel are protected work product.  Gavin does not address either the procedural or the substantive aspect of the work-product doctrine in any way in her reply to Liberty Mutual's objection.  Liberty Mutual's argument is meritorious.

"[F]ederal courts apply federal law when addressing the work product doctrine, even in diversity cases lacking any federal question."  Precision Airmotive Corp. v. Ryan Ins. Servs., Inc., No. 2:10-mc-244-JHR, 2011 WL 148818, at *7 (D. Me. Jan. 17, 2011) (quoting S.D. Warren Co. v. E. Elec. Corp., 201 F.R.D. 280, 282 (D. Me. 2001)).  The work-product doctrine provides that "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative . . . ."  Fed. R. Civ. P. 26(b)(3)(A).  "[T]he work product doctrine protects an attorney's written materials and mental impressions."  Vicor Corp. v. Vigilant Ins. Co., 674 F.3d 1, 17 (1st Cir. 2012) (quoting Comm'r of Revenue v. Comcast Corp., 901 N.E.2d 1185, 1200 (Mass. 2009); citing Hickman v. Taylor, 329 U.S. 495, 510 (1947)) (emphasis added).  Moreover, "an attorney or other representative's mental impressions, conclusions, opinions, or legal theories are afforded greater

protection than fact work product." Vicor, 674 F.3d at 18 (quoting Comm'r of Revenue, 901 N.E.2d at 1200) (internal quotation marks omitted). Materials that qualify as attorney work product may, however, be discoverable if:

>   (i) they are otherwise discoverable under Rule 26(b)(1); and
>
>   (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

Fed. R. Civ. P. 26(b)(3)(A).

"The party asserting the . . . work-product privilege bears the burden of showing that the privilege applies," Vicor, 674 F.3d at 17 (citations omitted), which includes "the burden of establishing that the requested material is work product," Galvin v. Pepe, No. 09-cv-104-PB, 2010 WL 2720608, at *3 (D.N.H. July 8, 2010) (citation omitted). "The test is whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." Galvin, 2010 WL 2720608, at *3 (quoting S.D. Warren, 201 F.R.D. at 282; citing Simon v. G.D. Searle & Co., 816 F.2d 397, 401 (8th Cir. 1987)) (internal quotation marks omitted). "If the privilege is established, the burden of proving any exception falls to its proponent." Vicor, 674 F.3d

at 17 (citing FDIC v. Ogden Corp., 202 F.3d 454, 460 (1st Cir. 2000)).

Judge Fischer's order in Lining v. Temporary Personnel Services, Inc., Civ. Action No. 07-01724, 2008 WL 1840746 (W.D. Pa. Apr. 23, 2008), is a useful guide to resolving the question before the court in this case. In Lining, the defendant moved to compel the plaintiff to answer questions about how many times he met with his attorney in preparation for his deposition, how long the meetings ran, who attended them, and whether the meetings were in person or telephonic. See id. at *2. Judge Fischer began by explaining that "[w]hile Rule 26(b)(3) only explicitly protects documents and tangible things, '[i]t is clear from Hickman that work product protection extends to both tangible and intangible work product,' also known as opinion work product." Id. (quoting In re Cendant Corp. Sec. Litig., 343 F.3d 658, 662 (3d Cir. 2003); citing Hickman, 329 U.S. at 510-11) (footnote omitted). Thereafter, Judge Fischer granted the motion to compel, explaining her decision this way:

> [T]he questions posed by counsel for Defendant American Bridge appear routine and do not infringe upon "an attorney's legal strategy, his intended lines of proof, his evaluation of the strengths and weaknesses of his case, and the inferences he draws from interviews of witnesses." Sporck [v. Peil], 759 F.2d [312,] 316 [(3d Cir. 1985)] (citations omitted). Plaintiff does not direct the Court to any case offering opinion work product protection to questions regarding whether an attorney met with his or her

13

> client prior to a deposition.  Moreover, the questions
> do not call for the substance of any meeting between
> Plaintiff and counsel prior to the deposition, which,
> in the Court's estimation, would clearly fall within
> the boundaries of the work product doctrine as
> espoused under Rule 26 and Hickman.  Hence, the Court
> finds that the Plaintiff has failed to his carry his
> burden and demonstrate that the work product doctrine
> applies in this instance.  Accordingly, at the second
> deposition, Plaintiff shall answer the general
> questions posed by counsel for Defendant American
> Bridge at the first deposition, specifically (1) did
> you meet with your attorney before the deposition; (2)
> on how many occasions did you meet with your attorney;
> (3) how long did you meet with your attorney; and (4)
> did you meet in person or over the telephone.

Lining, 2008 WL 1840746, at *2.  Here, the deposition question that prompted Gavin's motion to compel, and the motion to compel itself, do expressly call for the substance of communications between Mullane and Liberty Mutual's counsel.  Thus, the inquiry here "clearly fall[s] within the boundaries of the work product doctrine as espoused under Rule 26 and Hickman."  Lining, 2008 WL 1840746, at *2.

To be sure, the deponent in Lining was a party to the action rather than a third party, as is Mullane.  But, in several cases, courts have applied the same reasoning to depositions of former employees who were not parties.  See, e.g., In re Terrorist Attacks on Sept. 11, 2001, No. 03 MDL 1570(GBD)(FM), 2008 WL 8183819, at *6-7 (S.D.N.Y. May 21, 2008); Export-Import Bank of the U.S. v. Asia Pulp & Paper Co., 232 F.R.D. 103, 112 (S.D.N.Y. 2005); Surles v. Air France, No.

14

00CIV5004RMBFM, 2001 WL 815522, at *6 (S.D.N.Y. July 19, 2001) ("any information beyond the underlying facts of this case that Surles might unearth by questioning Weisser about his conversations with Air France's counsel would likely expose defense counsel's thought processes which are entitled to protection under the work product doctrine"); Morales v. United States, No. 94 Civ. 4865(JSR), 94 Civ. 8773(JSR), 1997 WL 223080, at *1 (S.D.N.Y. May 5, 1997) (denying plaintiff's "motion to compel two non-party witnesses . . . to answer questions about the substance of certain conversations they had with defendants' counsel . . . preparatory to the taking of their depositions").

Based on Lining, and the cases cited therein, the information Gavin seeks is protected by the work-product doctrine. Moreover, as Gavin does not even attempt to carry her burden of proving that any exception to the doctrine applies to her request, see Vicor, 674 F.3d at 17, her motion to compel, as it pertains to further deposing Mullane, is denied.

### Conclusion

For the reasons described above, Gavin's motion to compel, document no. 18, is denied, except to the extent that Liberty Mutual is ordered to produce to Gavin copies of the annotated

documents Mullane reviewed in preparation for her deposition, within ten days of the date of this order.

    SO ORDERED.

                                    _____
                                    Landya McCafferty
                                    United States Magistrate Judge

August 6, 2012

cc:   Debra Weiss Ford, Esq.
      Douglas J. Hoffman, Esq.
      John E. Lyons, Jr., Esq.
      Daniel P. Schwarz, Esq.
      K. Joshua Scott, Esq.